# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERRI HART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) CAUSE NO.  1:12-cv-1704-SEB-DKL |
| | ) |
| CAROLYN W. COLVIN,  Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Sherri Hart applied for disability benefits under the Social Security Act alleging that she became disabled on March 17, 2005 as a result of hypertension, arthritis, headaches, asthma, and depression.  (R. 123, 130, 154.)  The defendant Commissioner of Social Security denied her application and Ms. Hart seeks judicial review of that decision by way of this suit.  The assigned district judge referred this Cause for preparation of a report and recommendation.

## Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).   Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability

determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will

not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may

request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Hart sought disability-insurance benefits, supplemental-security-income disability benefits, and a declaration of a period of disability. Her application was denied on initial and reconsideration reviews, (R. 62-73, 78-91), and an ALJ then conducted a hearing on her application, (R. 34). Ms. Hart was represented by current counsel at the hearing. At step one of the five-step sequential evaluation process, the ALJ found that Ms. Hart was not engaged in substantial gainful activity. At step two, the ALJ found that Ms. Hart has severe impairments of hypertension, asthma, obesity, back pain, depression, anxiety, and dysthmic disorder. At step three, the ALJ found that none of Ms. Hart's impairments, severe or non-severe, alone or in combination, meets or medically equals any

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

of the listed impairments.  He found that no listing was satisfied.  He also specifically articulated his evaluation of mental Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders) and found neither satisfied.

For the purposes of steps four and five, the ALJ determined Ms. Hart's RFC by evaluating the medical evidence and her alleged symptoms.  He found that she retained the capacity to perform sedentary level of work with certain additional physical restrictions (*e.g.*, climbing, posture, and environment) and the following mental restrictions: **(1)** simple, unskilled work; **(2)** no fast-paced production work; **(3)** contact with others is routine and superficial in nature; and **(4)** regular breaks approximately every two hours.

At step four, the ALJ found that Ms. Hart's restricted RFC prevents the performance of any of her past relevant work.  At step five, the ALJ called for the testimony of a vocational expert because Ms. Hart's non-exertional limitations prevents the performance of the full range of sedentary work.  The vocational expert testified that jobs exist in significant numbers in the national economy that a person with Ms. Hart's age, education, transferability of work skills, and defined RFC could perform.  She specifically identified the job of "telephone information clerks," with 2,500 positions in Indiana and 42,000 nationally.[2]  (R. 58.)  Based on this testimony, and using, as a framework, the grid rule that directs a finding of not disabled, the ALJ found that Ms. Hart was not disabled through the

_____

[2] According to Ms. Hart's principal brief, the occupation is technically called "Telephone Quotation Clerk."  (*Plaintiff's Brief in Support of Her Complaint* [doc. 16] at 7 n. 8.)

date of his decision. (R. 19-29.) The Appeals Council denied Ms. Hart's request to review

the ALJ's decision, which rendered the ALJ's decision the final decision of the

Commissioner and the one that this Court reviews.

## Discussion

Ms. Hart asserts one error in the ALJ's decision. In evaluating the severity criteria

for Listings 12.04 and 12.06, the ALJ found:

> With regard to concentration, persistence or pace, the claimant has moderate
> difficulties. The claimant reported she needs reminders to take medications,
> and demonstrated significant work finding difficulties at time[s], and
> demonstrated memory and concentration impairment. She writes notes to
> remind herself to attend medical appointments and take medications (Ex.
> 6F:3 [(R. 301)]).

(R. 22.) Ms. Hart argues that the ALJ erred when he failed to include what he found to be

Ms. Hart's moderate deficiency in maintaining concentration, persistence, or pace in his

hypothetical questions to the vocational expert. Instead, the ALJ instructed the vocational

expert to consider a person who:

> has the residual functional capacity to do simple, unskilled work, no fast-
> paced production and can relate on at least a superficial basis on an ongoing
> basis with coworkers, supervisors, and members of the public, needs a
> regular work break approximately every two hours . . . .

(R. 57-58.)

Ms. Hart argues that, by not informing the vocational expert specifically of her

concentration, persistence, or pace difficulties, the ALJ violated the rule declared by the

Court of Appeals for the Seventh Circuit in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th

Cir. 2010):

> Our cases generally have required the ALJ to orient the VE [vocational expert] to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace. Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.
>
> *       *       *
>
> In most cases, however, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.
>
> *       *       *
>
> As discussed, limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace.
>
> We acknowledge that there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand. Yet, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on those limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.

*O'Connor-Spinner*, 627 F.3d at 619-21 (citations and footnote omitted). The Court did not

require that the specific terms "concentration," "persistence," or "pace" be used in all

circumstances. It articulated two exceptions that have been generally recognized in the

case law. First, if the record reveals that the vocational expert independently reviewed the

medical evidence or heard the medical testimony that was directly relevant to the

deficiencies, then the vocational expert's familiarity with the claimant's limitations can be

assumed despite gaps in the ALJ's hypotheticals. *Id.* at 619. However, if an ALJ poses a

series of increasingly restrictive hypotheticals to the expert, then the assumption is that the

expert's attention was focused on the hypotheticals and not other evidence in the record or testimony. The second exception is that, if the ALJ's alternate phrasing accurately excludes the functions that the claimant cannot perform due to his deficiencies, then the vocational expert has been fully advised. In other words, when the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then the deficiencies have been accommodated. The example that *O'Connor-Spinner* cited as the most frequent application of this second exception is when the evidence shows that a claimant's deficiencies in concentration, persistence, or pace are stress- or panic-related and the ALJ's hypothetical restricts the claimant to low-stress work. *Id.* at 620.

Ms. Hart argues that, because neither exception applies in her case, the ALJ's failure to advise the vocational expert that she has moderate difficulties in concentration, persistence, or pace falls within *O'Connor-Spinner*'s general rule and, thus, was erroneous. However, another version of *O'Connor-Spinner*'s second exception is when the ALJ includes in his hypothetical the functional limitations into which a medical expert has translated a claimant's deficiencies in concentration, persistence, or pace. *See Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002); *Williams v. Colvin*, No. 1:12-cv-613-DKL-WTL, *Entry*, 2013 WL 5487367 (S.D. Ind., Sept. 30, 2013); *Presser v. Colvin*, No. 1:12-cv-835-SEB-DKL, *Report and Recommendation* [doc. 25] at 6-9, *adopted by the court*, 2013 WL 5309889, *3-4 (S.D. Ind., Sept. 23, 2013). *O'Connor-Spinner* held that an ALJ's limitation of a claimant to simple, repetitive tasks does not "necessarily" accommodate her deficiencies in concentration,

persistence, or pace — not that it could never do so.  In other words, there must be a basis in expert medical and/or vocational opinion for the translation of a concentration, persistence, or pace deficiency into functional limitations.

The ALJ had such a basis for his translation in this case.  While it would have been better if he had more explicitly articulated the basis, the basis is nonetheless evident in the record.  Amy S. Johnson, Ph.D., psychologist, reviewed the evidence on initial review of Ms. Hart's application and completed a Psychiatric Review Technique form ("PRT"), for the purposes of evaluating satisfaction of the Listings' diagnostic and severity criteria, (R. 308), and a Mental Residual Functional Capacity Assessment form ("MRFC"), for the purposes of evaluating Ms. Hart's functional limitations, (R. 304).  On the PRT, while Dr. Johnson found that Ms. Hart had a "moderate" limitation in concentration, persistence, or pace, (R. 318), she ultimately concluded that Ms. Hart did not have the "marked" limitations, episodes of decompensation, or C criteria required for Listings-level severity, (R. 318, 318).  On her MRFC, Dr. Johnson was more specific, breaking down the functional components of Ms. Hart's concentration, persistence, or pace deficiency.  She found that Ms. Hart was moderately limited in **(1)** "the ability to carry out detailed instructions," **(2)** "the ability to maintain attention and concentration for extended periods," and **(3)** "the ability to sustain an ordinary routine without special supervision," and was not significantly limited in the five other components of the abilities to "carry out very short and simple instructions;" "perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances;" "work in coordination with or proximity to others without being distracted by them;" "make simple work-related decisions;" and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 304-05.)

> In her narrative elaboration of her opinions on the MRFC, Dr. Johnson wrote:
>
> . . . attention and concentration are moderately impacted but appear reasonable for tasks, and [claimant] appears to be able to tolerate superficial, casual interactions with others.
>
> The evidence suggests that claimant can understand, remember, and carry-out at least simple tasks. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task[s] for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with at least simple work.

(R. 307.) Dr. Johnson's medical opinion was affirmed by Joseph A. Pressner, Ph.D., psychologist, on reconsideration review. (R. 331.) Both Drs. Johnson and Pressner agreed that Ms. Hart was not disabled. (R. 62-65, 331.) The ALJ credited both Drs. Johnson's and Pressner's psychological assessments, finding them consistent with the record as a whole. (R. 27.)

As noted, the ALJ instructed the vocational expert to consider an individual who "has the residual functional capacity to do simple, unskilled work, no fast-paced production and can relate on at least a superficial basis on an ongoing basis with coworkers, supervisors, and members of the public, needs a regular work break

11

approximately every two hours . . . . "  (R. 57-58.)[3]  These functional limitations incorporate

all of Dr. Johnson's and Dr. Pressner's medical opinions regarding Ms. Hart's functional

limitations due to her deficiency in concentration, persistence, or pace.  In his hypothetical

to the vocational expert, the ALJ limited Ms. Hart to simple work and no more than

superficial interaction with co-workers, supervisors, and the public.  He also included a

restriction to unskilled work but that addition goes beyond what the medical experts

prescribed.  Because they opined that Ms. Hart could perform "at least" simple tasks, Ms.

Hart could not have been prejudiced by the addition of a further limitation.  The ALJ also

articulated a limitation to no fast-paced production work but, again, at worst, such a

limitation goes beyond what Dr. Johnson specifically opined and was, therefore, harmless,

and, by reducing work stress, was a reasonable accommodation of Dr. Johnson's opinion

that Ms. Hart can manage "the stresses involved with at least simple work."  Substantial

medical-opinion evidence thus supports the ALJ's translation of Ms. Hart's moderate

deficiency in concentration, persistence, or pace into the functional limitations described

to the vocational expert.  The ALJ's decision did not violate *O'Connor-Spinner.*

In her reply, Ms. Hart argued for the first time that the ALJ's restriction to "a regular

work break approximately every two hours" fails to accommodate her concentration,

persistence, or pace deficiency because such a break schedule is normal in the workplace

---

[3] The description that Ms. Hart is limited to "routine" as well as superficial contact with others, which appears in the ALJ's decision, (R. 23), is not part of the hypothetical question that he asked the vocational expert, (R. 57).  Ms. Hart raised no issue regarding this difference and the Court perceives none.

and is part of the Social Security Administration's regulations defining a normal workplace at the sedentary RFC level. Raised for the first time in reply, the argument is forfeited. In addition, again, the ALJ's hypothetical to the vocational expert incorporated all Dr. Johnson's and Pressner's opinions regarding Ms. Hart's functional limitations. If his additional restriction to normal work breaks is a nullity, as Ms. Hart contends, then she could not be prejudiced because Dr. Johnson did not find any additional limitation regarding work breaks. As it is, the ALJ's restriction to normal work breaks is reasonably construed as a reiteration of Dr. Johnson's finding that Ms. Hart is "not significantly limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent *pace* without *an unreasonable number and length of rest periods*." (R. 305 (emphases added).)

Also in her reply, Ms. Hart developed a passing reference in her primary brief into an argument that the Telephone Quotation Clerk occupation that the vocational expert opined that Ms. Hart could perform is obsolete. She points out that that occupation listing in the *Dictionary of Occupational Titles* was last updated in 1977 and argues that it is "manifestly" obsolete because investors today do not call a brokerage house to obtain stock quotes but access such information *via* the internet. Ms. Hart's argument in her primary brief was that the occupation was inconsistent with a moderate deficiency in concentration, persistence, or pace; her suggestion that the occupation and/or its numbers existing in the national economy was obsolete was relegated to a footnote. Thus developed first in her

13

reply, the argument was forfeited. In addition, Ms. Hart was represented by present

counsel during her hearing and he had an opportunity to raise and explore the

obsolescence of the *D.O.T.*'s numbers with the vocational expert; instead, he inquired about

only the impact on the numbers of existing positions if Ms. Hart needed to elevate her legs,

was off-task twenty-five percent of the time, or was absent more than four days each

month. (R. 58-59.)

Even so, Ms. Hart does not present, point to, or even suggest any evidence showing

a substantial decline in telephonic inquiries for stock quotes or in the numbers of jobs

existing in the category of Telephone Quotation Clerks. Further, she does not show that

the numbers of those jobs existing in the national economy have declined to below an

amount that qualifies as significant.[4] The Court notes that, while Ms. Hart asserts that most

investors now access stock-quote information *via* the internet, the *D.O.T.* occupation

description quoted by her includes more than answering customers' telephonic inquires

about stock quotes; it also includes answering inquiries for other information, relaying calls

to registered representatives, and calling customers to inform them of stock quotations.

(*Plaintiff's Brief in Support of Her Complaint* at 7-8 n. 8.) Because Ms. Hart failed to show that

the occupation or its numbers are, in fact, obsolete and the same is not self-evident, error

---

[4] Neither the Social Security Act nor the Commissioner's regulations define a threshold when the number of jobs becomes "significant." However, decisions have found that 1,000 jobs, and fewer, constitute a significant number. See *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993); *Rodriguez v. Astrue*, No. 11 Civ. 6977 (PAC) (DF), 2013 WL 3753411, *13-15 (S.D. N.Y., July 17, 2013); *Dameron v. Astrue*, No. 4:11-134-DGK-SSA, 2012 WL 4405298, *4 (W.D. Mo., Sept. 24, 2012). According to this precedent, Ms. Hart would have had to have shown or indicated that the 42,000 jobs indicated in the *D.O.T.* had substantially diminished.

has not been shown.

## Conclusion

The ALJ's decision is supported by substantial evidence and has not been shown to be the result of legal error. This magistrate judge recommends that the decision of the Commissioner denying Ms. Hart's application for disability benefits be **affirmed**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 02/19/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.