UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHERRI D. HART, )
)
        Plaintiff, )
)
vs. )
) No. 1:12-cv-01704-SEB-DKL
CAROLYN W. COLVIN, )
)
        Defendant. )

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff Ms. Sherri D. Hart (Ms. Hart) Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). As discussed below, the Administrative Law Judge ("ALJ") found that even though Ms. Hart had some severe impairments and could no longer perform her past relevant work, she was not disabled. The ALJ came to this conclusion based on the fact that she could perform a job that currently exists in significant numbers in the national economy, namely, a Telephone Information Clerk. R. at 28. This case was referred for consideration to Magistrate Judge LaRue, who issued a Report and Recommendation that the Commissioner's decision be upheld. This cause is now before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. For the

reasons detailed herein, we adopt the Magistrate Judge's Report and Recommendation and affirm the Commissioner's decision.

**I.      Applicable Law and Standard of Review**

To be eligible for DIB, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. § 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if the claimant's impairments are not severe, then he is not disabled. 20 C.F.R. §§ 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-

determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her Residual Functional Capacity ("RFC") will be determined for the purposes of the next two steps. A claimant's RFC is her ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The claimant bears the burden of proof at steps one through four. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

At the fifth step, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The burden of proof shifts to the Commissioner at step five to prove that there are jobs that exist in the national economy that the claimant can perform. *Id.* For a claimant with purely exertional limitations, the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination. The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled." 20 C.F.R. §§ 404.1569, 404.1569a. Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(b). If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational characteristics. 20 C.F.R. §§ 404.1569, 404.1569a; *Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368-369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a Magistrate Judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision regarding those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## II. The ALJ's Decision

At the first step of the sequential evaluation process, the ALJ determined that even though Ms. Hart did work after her alleged disability onset date of March 17, 2005, she was not engaged in "substantial gainful activity." R. at 21. The ALJ then moved on to the second step where he found that Ms. Hart suffered from the following severe impairments: hypertension, asthma, obesity, back pain, depression, anxiety, and dysthymic disorder. R. at 21. After determining that Ms. Hart did have severe impairments, the ALJ proceeded to step three where he concluded that these severe impairments did not meet or medically equal the severity of one of the conditions in the Listing of Impairments.

In between steps three and four, the ALJ determined Ms. Hart's RFC and found that Ms. Hart had the capability to "do simple unskilled work, no fast-paced production work, and is limited to work where contact with others is routine and superficial in nature, and she needs a regular break approximately every two hours." R. at 23. In coming to this conclusion, the ALJ engaged in a two-step process by which she determined that Ms. Hart's impairments could indeed reasonably be expected to produce her symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC. In so finding, the ALJ specifically noted, in terms of her physical limitations, that Ms. Hart alleged in her testimony that she needed to elevate her leg and use a cane. R. at 24. These limitations were not supported by the medial records. In terms of her mental limitations, Ms. Hart claimed "memory impairment, depression, and anxiety" and the inability to work regularly due to these mental impairments. The ALJ acknowledged Ms. Hart's diagnosis of dysthymic disorder and anxiety disorder and the need for moderate limitations. R. at 25. The ALJ did note, however, that she "reported few limitations in

activities of daily living, but the exam indicated that she did have an impaired memory, which is consistent with other exam records" and "is accommodated in the RFC . . . ." R. at 26.

After making a determination of Ms. Hart's RFC, the ALJ then went on to determine in the fourth step that Ms. Hart could not perform her past relevant work. This finding was based on Ms. Hart's RFC limitations on lifting and carrying, which her previous work required. Finally, the ALJ moved on to the fifth and final step of the sequential evaluation. At this step, the ALJ considered "the testimony of the vocational expert . . . the claimant's age, education, work experience, and residual functional capacity (RFC)" and concluded that Ms. Hart was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 28. Therefore, the ALJ concluded that Ms. Hart was not disabled.

## IV. Discussion

Although broken into several sections, Ms. Hart raises one primary objection to the Report and Recommendation of the Magistrate Judge, to wit, that the ALJ failed to fully consider her moderate difficulties in maintaining concentration, persistence, or pace when making his RFC assessment and in posing hypotheticals to the vocational expert. We discuss Plaintiff's objection below. However, as an initial matter, we note that Ms. Hart's opening brief repeatedly accuses the Magistrate Judge of having provided an "improper post hoc rationalization" supporting the ALJ's decision. The Seventh Circuit has explained this concept, as follows:

> The doctrine of harmless error indeed is applicable to judicial review of administrative decisions. If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time. But that is not the government's understanding of the doctrine of harmless error, if we may judge from its brief and oral argument in this case (and not only this case—*see, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 475-77 (7th Cir. 2009) (per curiam); *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) (per curiam); *Craft v. Astrue*, 539 F.3d 668, 675, 678-79 (7th Cir. 2008); *Stout v. Commissioner*, Social Security Administration, 454

> F.3d 1050, 1054-56 (9th Cir. 2006); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.

*Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010). In other words, if the ALJ has indeed committed an error, the court may only affirm the decision if it has "great confidence" that the decision will be reinstated upon remand because of the overwhelming support for that decision in the record. *Newton v. Colvin*, 2014 U.S. LEXIS 23440, at *27-28 (N.D. Ind. Feb. 25, 2014). Thus, before considering whether the error was harmless, Plaintiff must establish that such an error was committed. As explained below, we find that Plaintiff has failed to do so.

As stated above, Ms. Hart asserts that the ALJ failed to appropriately account for her moderate difficulties in maintaining concentration, persistence, or pace when making his RFC assessment and in posing hypotheticals to the vocational expert. Plaintiff argues that under *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010) the ALJ's RFC determination and questions to the vocational expert should "ordinarily reflect an ALJ's moderate-difficulties finding." R. at 504.

In *O'Connor-Spinner* the Seventh Circuit Court of Appeals established a general rule that "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). The court also indicated, however, that it was "not a per se requirement that this specific terminology ("concentration,

7

persistence and pace") be used." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). The court also articulated two exceptions to this principle, one of which applies here. The relevant exception applies when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). This exception has a further application, as noted by the Magistrate Judge, which allows an ALJ to translate a medical expert's opinion of a claimant's deficiencies into functional limitations as long as there is a medical basis. In other words, the ALJ "is free to formulate h[is] mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Yurt v. Colvin,* 1:12-CV-00246, 2013 WL 3421918 (N.D. Ind. July 8, 2013); see also *Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir. 1987); see also *Johansen v. Barnhart,* 314 F.3d 283, 289 (7th Cir. 2002)

During Ms. Hart's hearing, the ALJ posed a hypothetical to the vocational expert describing a person who can "do simple unskilled work; no fast-paced production; and can relate on at least a superficial basis on an ongoing basis with co-workers, supervisors, and members of the public." R. at 57. This formulation of Ms. Hart's functional limitations by the ALJ, which was also included in the ALJ's RFC, was based on the medical opinion of Dr. Amy S. Johnson, Ph.D. Dr. Johnson indicated that Ms. Hart could "understand, remember, and carry out simple tasks;" could "relate at least on a superficial basis on an ongoing basis with co-workers;" "could attend to tasks[s] for sufficient periods of time to complete tasks;" and could "manage the stresses involved with at least simple work." R. at 307. Dr. Johnson's medical opinion was also supported by Joseph A. Pressner, Ph.D. R. at 331. It is clear that the ALJ relied on this medical determination of Dr. Johnson in formulating the RFC and in posing his hypothetical to the

vocational expert, thus the vocational expert "was supplied with all the relevant information and provided a fully informed and reliable answer." *Delaney v. Barnhart*, 03 C 8117, 2005 WL 1655204 (N.D. Ill. May 13, 2005). Therefore, the ALJ's RFC and the corresponding hypothetical questions that were posed to the vocational expert were adequately supported by medical evidence in the record and were not in error.

The Plaintiff also objects to the reliance by the ALJ and Magistrate Judge on the Mental Residual Functional Capacity Assessment (MRFCA) form that was completed by Dr. Johnson. Ms. Hart argues that this form is irrelevant, was mischaracterized by the Magistrate Judge, and is not in compliance with *O'Connor-Spinner.* See Pl's Obj. at 507-08. Ms. Hart does not cite to any authority within this circuit to support these propositions. Instead, Plaintiff relies on the POMS manual, which contains the Social Security Administration's internal procedures, and authority from the Third Circuit. The Seventh Circuit has held that "the rules contained in the POMS manual have no legal effect and are, at best, persuasive." *Thompson v. Astrue,* 3:11-CV-472 CAN, 2013 WL 393290 (N.D. Ind. Jan. 31, 2013). Nevertheless, the POMS manual does indicate that Section I of the MRFCA is "merely a worksheet" and "does not constitute the RFC assessment." POMS, DI 24510.060. The manual then states that "Section III [of the MRFCA form] is for recording the mental RFC determination." POMS, DI 24510.060(B)(4)(a). This is precisely where Dr. Johnson recorded her narrative of Ms. Hart's mental RFC determination that was then incorporated into the ALJ's RFC determination and hypothetical that was posed to the vocational expert. See R. at 86. Therefore, the use of the MRFCA form by the ALJ was not in error because the "ALJ properly incorporated Dr. [Johnson's] opined limitations into his RFC determination." See *Dehart v. Colvin,* 4:12-CV-137-WGH-TWP, 2013 WL 6440504 (S.D. Ind. Dec. 9, 2013).

Plaintiff also asserts that the ALJ's RFC and question to the vocational expert was in error because therein he opined that Plaintiff could take work breaks every two hours, which she alleges does not account for her moderate difficulties in concentration, persistence, or pace. However, the ALJ relied in part on the opinion of Dr. Johnson that despite Plaintiff's moderate limitations in concentration, persistence, and pace, she was able to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. at 304-05. As explained above, we find no error in the ALJ's use of Plaintiff's functional limitations for purposes of the RFC or in his hypothetical and, likewise, we find no error in the ALJ having noted a lack of a functional limitation given that it is supported by the record.

## Conclusion

For the reasons detailed herein, we find that none of Ms. Hart's objections to the Magistrate Judge's Report and Recommendation have merit. Thus, these objections are OVERRULED and we ADOPT the recommendations set forth in the Magistrate Judge's Report and Recommendation. Final judgment shall enter in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

Date: 03/28/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

J. Frank Hanley II
jfrankhanley@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov